# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

ADAM WIKTORCZYK

(Name and Address of Defendant)

**FILED**
12-17-07
DEC 1 7 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE SCHENKIER

CRIMINAL COMPLAINT

CASE NUMBER: 07CR 0847

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __February 17, 2003__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant(s) did, (Track Statutory Language of Offense)

knowingly devise, intend to devise, and participate in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises,

in violation of Title __18__ United States Code, Section(s) __1341__

I further state that I am a __Special Agent of the FBI__ and that this complaint is based on the following facts:
                                Official Title

See attached Affidavit

Continued on the attached sheet and made a part hereof:  __X__ Yes  ___ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

__12-17-07__    at   Chicago, Illinois
Date                          City and State

Magistrate Judge Sidney I. Schenkier
Name & Title of Judicial Officer                Signature of Judicial Officer

STATE OF ILLINOIS      )                                                       **UNDER SEAL**
                       ) SS
COUNTY OF COOK         )

## AFFIDAVIT

I, Paul K. Zukas, after being duly sworn, depose and state as follows:

1. I am a Special Agent (SA) of the Federal Bureau of Investigation assigned to the Chicago Division and have been so employed since August 2003. I am currently assigned to a White Collar Crime Squad. I previously was assigned to a Eurasian Organized Crime Squad and have conducted criminal investigations of Eurasian gangs and other criminal organizations.

2. In my capacity as an FBI Agent, I have received training in the enforcement of federal criminal laws under the investigative jurisdiction of the FBI, including but not limited to violations of Title 18. I have participated in a wide variety of investigations including narcotics investigations, wire fraud, mail fraud, immigration fraud, bank fraud, health care fraud, and illegal use of interstate communications. Additionally, I have used and become familiar with all normal investigative techniques, including but not limited to various types of surveillance, consensual monitoring and recording of both telephonic and non-telephonic communications, use of pen registers, interviewing and interrogation of subjects and witnesses, and debriefing of witnesses and informants. I have also been involved in the use of sophisticated techniques such as Title III wire interceptions. I have also participated in numerous consensual searches and search warrants which have led to the seizure of narcotics, false documents such as passports, and other items of evidence.

3. This affidavit is in support of a complaint and an arrest warrant charging ADAM WIKTORCZYK (hereinafter "ADAM") with mail fraud in violation of Title 18, United States Code, Section 1341.

1

4. This affidavit is based on my personal knowledge, on witness interviews, on my review of documents, and on information furnished to me by other law enforcement personnel or obtained during the course of my investigation.

5. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known to the government.

6. In approximately November 2004 the FBI began an investigation into the activities of a group of individuals of Polish ethnicity involved in the staging of phony automobile accidents in Chicago. The investigation determined that the ringleader of this group is named JAN WIKTORCZYK, a/k/a KRZYSZTOF KOWALSKI, a/k/a TADEUSZ DZIEWONSKI (hereinafter "JAN"), and that JAN and his confederates utilized a vehicle body shop owned and operated by JAN and ADAM called AAAA AUTO CARE, INC. (hereinafter "AAAA") located at 4919 W. Diversey Ave., Chicago, Illinois. According to information contained in criminal and public records I have reviewed, JAN has a date of birth of 4/29/1955 and is a legal permanent resident of the United States.

7. The investigation revealed that JAN is the ringleader of a "staged" or fraudulent vehicle accident enterprise in the Chicago area wherein salvage vehicles (i.e., vehicles that have been severely damaged in accidents or floods and therefore declared "total losses" by an insurance company) purchased from auction by AAAA are used in pre-planned and staged accidents with other AAAA- purchased vehicles or with vehicles owned by individuals willing to engage in the scheme. The purpose of this scheme is to defraud the vehicle insurance companies out of monies paid out on insurance policies after the false accidents have been executed and resultant fraudulent insurance claims filed by the perpetrators.

8. The investigation further revealed that JAN's adult brother ADAM was involved in and benefited financially from this criminal scheme. According to criminal and public records, ADAM currently resides at 410 S. Barron, Bensenville, Illinois, has a date of birth of November 19, 1950, and a social security number of 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. Records further show that ADAM was born in Poland but is now a legal permanent resident of the United States with an alien registration number A077433021. Public record searches show that ADAM is listed as one of the owners of AAAA.

9. On November 27, 2007, I learned from a Chicago cooperating witness (CW1) that ADAM was possibly intending to leave the United States for Poland. CW1 was not certain if ADAM was leaving for Poland permanently or if he intended to return to the United States at a later date. On December 12, 2007, I subsequently learned from LOT Airlines that ADAM had purchased a one-way ticket from Chicago to Krakow, Poland, non-stop, scheduled to depart O'Hare airport at 5:30 pm on Monday, December 17, 2007. The flight number is LOT #008 leaving Terminal 5 at the above date and time.

Background of Investigation:

10. In July 2004, investigators from the National Insurance Crime Bureau (NICB) provided information to the FBI that showed that JAN, through his operation of AAAA, was involved in fraudulent vehicle accidents and false vehicle thefts. Initial investigation showed that JAN and AAAA would purchase salvage vehicles from car auctions, make repairs to the vehicles at AAAA, and then sell them. Initial findings by NICB investigators showed a high frequency of car accidents involving vehicles that were purchased from salvage by JAN and AAAA. On many occasions, AAAA salvage vehicles were reported as being involved in

accidents with other AAAA salvage vehicles. This led NICB investigators to believe that a large number, if not all, of these reported vehicle accidents were in fact pre-planned and fraudulent.

11. After receiving this information from the NICB investigators, I investigated approximately 40 automobile accidents involving AAAA vehicles that I believe were staged between 2002-05. In addition, I have interviewed approximately 16 insurance claimants who admitted participating in fraudulent, staged vehicle accidents with AAAA salvage vehicles they had purchased, or with AAAA salvage vehicles driven by other drivers involved in the alleged accidents. An examination of vehicle accident insurance claims showed that ADAM filed fraudulent insurance claims, or was the claimant driver during the fraudulent accident. As a consequence ADAM received monies from insurance companies as a result of staged vehicle accidents involving AAAA vehicles on at least two separate occasions during 2003 and 2004. The following is a summary of those two fraudulent claims:

February 11th, 2003 Staged Accident:

12. On February 11, 2003 at approximately 8:45 PM a three car accident allegedly occurred near the address of 8601 W. Irving Park Road in Chicago, Illinois.

13. Claims on this accident were filed with STATE FARM INSURANCE, claim # 13-8119-577, by two claimants. One of the claims was filed by ADAM as the owner of a 2000 BMW 740i, VIN # WBAGH8347YDP08672, allegedly driven by a Polish female named DAGMARA KACZMARCZYK. This vehicle was originally a salvage vehicle purchased by AAAA on August 4, 2000. The title for this vehicle shows that ADAM then purchased the vehicle on January 17, 2001 and an Illinois title was issued to ADAM on December 20, 2001. At the time of this alleged accident, the vehicle had Illinois license plates issued to ADAM.

The second claimant was PAWEL KOZAK, who was allegedly driving a 1999 Jeep Grand Cherokee, VIN # 1J4GW58S5XC539328. This Jeep Grand Cherokee was also originally a salvage vehicle purchased by AAAA on June 18, 2002. KOZAK was issued temporary Illinois license plates by AAAA on December 27, 2002. My investigation revealed that KOZAK was once an employee at AAAA who worked with both JAN and ADAM.

The insured in this accident was a Polish national named MAREK POGWIZD, who was purportedly driving a 1999 Chevrolet Monte Carlo, VIN # 2G1WW12M3X9297160. This vehicle was not an AAAA salvage vehicle although my investigation revealed that POGWIZD and JAN have been associates since 2001.

14. I have reviewed telephone subscriber records for a T-Mobile cell telephone, number 773-875-6115, for the period January 1, 2003 through December 31, 2004. These records demonstrate that EWA WIKTORCZYK, JAN'S adult daughter, and ADAM'S adult niece is the registered subscriber of this phone number. However, my investigation has demonstrated that JAN uses this phone to plan and control staged accidents, as indicated by the following:

   a. On November 19, 2004, a cooperating witness (CW2) made a recorded telephone call to JAN in which CW2 called JAN at 773-875-6115.

   b. On October 6, 2005, another cooperating witness (CW3) admitted to me his participation in three separate staged accidents organized by JAN, including one on February 3, 2004. CW3 told me that JAN coordinated these accidents over his cell phone, and he (CW3) spoke to JAN on his cell phone immediately before the February 3, 2004 fake accident. CW3 told me that JAN gave him explicit directions over the cell phone as to the exact moment CW3 should pull his car into the traffic in order to be struck by the other car

5

    in the staged accident. CW3 told me that JAN's cell number was 773-875-6115.

    c. On December 15, 2005, a fourth cooperating witness (CW4) made a recorded telephone call to JAN in which CW4 called JAN at 773-875-6115.

    d. On June 2, 2006, a fifth cooperating witness (CW5) admitted to me her participation in three separate staged accidents organized by JAN. CW5 was also one of the participants in the February 3, 2004 staged accident, one of the same phony accidents CW3 participated in. CW5 also told me that she had spoken to JAN on cell phone number 773-875-6115 both immediately before and after the staged accident.

    e. I have examined the call detail data for cell number 773-875-6115 for the period January 1, 2003 through December 31, 2004, and these records show many calls between the cell phone and other phone numbers I have identified as belonging to participants in staged accidents involving AAAA vehicles.

15. On July 1, 2005, I interviewed DAGMARA KACZMARCZYK about the February 11th, 2003 accident involving ADAM and the 2000 BMW 740i described above in paragraphs 12 and 13. Among other things, KACZMARCZYK advised that she has known JAN for approximately 5-6 years and considers him to be a friend. KACZMARCZYK also stated that she personally knows ADAM. KACZMARCZYK admitted that this accident was actually a fraudulent accident orchestrated by JAN. KACZMARCZYK told me that JAN had originally proposed the fraudulent accident to her about one week before the accident occurred. On the day of the accident, KACZMARCZYK advised that JAN gave her very explicit instructions on what to do during the staged accident and what to tell the police when they arrived at the scene of the

accident. KACZMARCZYK stated that JAN was actually driving the BMW 740i during the accident and that she was waiting at the corner. After the accident occurred she walked to the accident scene and waited for the police to arrive. When the police arrived she lied to the police by telling them that she was the driver of the BMW 740i during the accident. KACZMARCZYK also told me that the BMW 740i was already damaged before the fraudulent accident occurred. KACZMARCZYK stated that the vehicle's passenger side front window was already broken out and there was already damage to the vehicle's left side.

According to the police report filed for this accident, the telephone number that KACZMARCZYK provided to the officer was 773-317-2368. Analysis of JAN's cell phone number 773-875-6115 for February 9-11, 2003 showed a total of twenty (20) calls between JAN's cell phone and KACZMARCZYK's cell phone, including seven (7) separate calls between KACZMARCZYK and JAN in the approximately two hours before the alleged accident between POGWIZD, KOZAK, and KACZMARCZYK at 7:03 PM, 7:37 PM, 7:38 PM, 8:04 PM, 8:16 PM, 8:28 PM, and 8:30 PM. This activity is consistent with the statements of CW3 and CW5 described above regarding JAN's orchestration of the events surrounding staged accidents, and I believe demonstrates that JAN organized the February 11, 2003 phony accident in which ADAM participated.

16. State Farm records for this claim showed that ADAM received a check from STATE FARM INSURANCE for the amount of $16,485.57 as a result of this fraudulent accident. A copy of this check shows that it was endorsed by ADAM. Another check in the amount of $26,264.43 was issued by the insurance company to LASALLE BANK as payment on behalf of ADAM. The title for the BMW 740i shows ADAM as the owner but LASALLE BANK as the

first lien-holder. On February 17, 2003, State Farm mailed a check to Marek Pogwizd in the amount of $9,646.17 to 1542 Plainfield Rd., Oswego, Illinois, 60543.

The total payout for the fraudulent accident which occurred on February 11, 2003, was $59,193.10.

December 9, 2003 Staged Accident:

17. On December 9, 2003 at approximately 7:20 PM a three car accident allegedly occurred near the address of 3772 N. Milwaukee in Chicago, Illinois.

18. Claims on this accident were filed with GEICO INSURANCE, claim # 0229332960101014, by two claimants. One of the claims was filed by AAAA as the owner of a 2003 Acura TL, VIN # 19UUA56633A087254, allegedly driven by a Polish national previously identified in paragraph 14 as CW3. This vehicle was originally a salvage vehicle purchased by AAAA on August 30, 2003. At the time of this accident the Acura had AAAA dealer plates on the vehicle. My investigation has revealed that CW3 was an employee of AAAA at approximately the time that this accident occurred.

The second claimant was BOB SWIDERSKI, the owner of a 2000 Lexus RX300, VIN # JT6HF10U2Y0139947, which car was purportedly driven by ADAM in this accident. This Lexus RX300 was originally a salvage vehicle purchased by DUKE'S AUTO on December 11, 2002. My investigation revealed that DUKE'S AUTO is owned and operated by SWIDERSKI and that SWIDERSKI has known JAN for about ten years.

The insured in this accident was a Polish national named RAFAL JAKUSZ who was purportedly driving a 1998 Audi A4, VIN # WAUED28D1WA175466. This vehicle was not an AAAA salvage vehicle although my investigation revealed that JAKUSZ and JAN were associates before this accident took place.

8

19. On October 6, 2005, I interviewed CW3 concerning the above vehicle accident which purportedly occurred on December 9, 2003. CW3 admitted to me that this accident was in fact a fraudulent, staged accident orchestrated by JAN.

20. CW3 advised that JAN had offered him $500 to participate in this fraudulent accident. CW3 agreed to participate in the scheme and was paid the $500 in cash by JAN on the morning of the accident. JAN had instructed CW3 to drive an Acura down Milwaukee Avenue in Chicago when an Audi, driving from the opposite direction, would then attempt a left-hand turn and cause the collision. CW3 stated that after the Audi pulled out in front of him causing the initial collision, a Lexus driven by ADAM rear-ended him and the Audi. CW3 advised that the Acura already had damage to the bumper and hood prior to the accident. CW3 stated that JAN watched the collision occur from a parked car in a parking lot adjacent to the accident location. CW3 stated that he and JAN coordinated the accident via their cell phones. After the collision, CW3 stated that the driver of the Audi called the police and the tow truck company. CW3 advised that both the driver of the Audi and ADAM, who had been driving the Lexus, both spoke to the police. CW3 had been instructed by JAN to lie to the police and tell them the false story about how the accident occurred. CW3 stated that the Audi and the Acura were both towed to AAAA after the accident but CW3 believed the Lexus may have been towed somewhere else.

21. I showed CW3 numbered photos with no identifiers and asked him if he recognized any of the pictures. CW3 immediately picked out JAKUSZ as the driver of the Audi during the fraudulent accident and ADAM as the driver of the Lexus during the fraudulent accident.

Analysis of JAN's cell phone number 773-875-6115 for December 8-9, 2003 showed a total of sixteen (16) calls between JAN's cell phone and CW3's cell phone, including seven (7) separate calls between CW3 and JAN in the approximately twenty minutes before the alleged

accident between CW3, ADAM, and JAKUSZ at 7:02 PM, 7:06 PM, 7:10 PM, 7:15 PM, 7:16 PM, 7:16 PM again, and 7:17 PM. This activity is consistent with the statements of CW3 described above regarding JAN'S orchestration of the events surrounding staged accidents, and I believe demonstrates that JAN organized the December 9, 2003 phony accident in which ADAM participated.

22. On January 30, 2006, I interviewed SWIDERSKI concerning the above vehicle accident which purportedly occurred on December 9, 2003. SWIDERSKI advised that he was the owner of the Lexus RX300 which had been involved in this accident. SWIDERSKI told me that either the day this accident occurred or possibly one day before this accident occurred, JAN'S brother, ADAM, had actually come to DUKE'S AUTO, SWIDERSKI'S place of business, to pick up the Lexus. SWIDERSKI advised that he gave the Lexus to ADAM to have the vehicle's alignment repaired at AAAA. SWIDERSKI stated that he did not know that the Lexus was going to be used in a fraudulent accident and only found out that the vehicle had even been in an accident after ADAM told him. ADAM further told SWIDERSKI that he (ADAM) had been driving the Lexus when the accident happened. ADAM also stated that he would take care of the accident damages on the Lexus for SWIDERSKI. SWIDERSKI told me that some time later ADAM returned the Lexus to DUKE'S AUTO where an insurance adjustor later assessed the damage to the vehicle. SWIDERSKI advised that the insurance company gave him a check for approximately $4,000 to $7,000. SWIDERSKI said that he deposited the check into the business account of DUKE'S AUTO. SWIDERSKI then advised that he gave the Lexus and almost all the insurance money back to ADAM so that AAAA could repair the car. SWIDERSKI said that he kept approximately $500 to $1,000 of the insurance money for himself but the rest he gave to ADAM.

23. GEICO records for this claim showed that AAAA received two checks from GEICO INSURANCE for the cumulative amount of $9,625.41 as a result of this fraudulent accident. Another check in the amount of $7,630.57 was issued by the insurance company to SWIDERSKI for the damage to the Lexus. The total payout for the fraudulent accident which occurred on December 9, 2003 was $28,519.51.

24. It is also respectfully requested that this Court issue an Order pursuant to which this affidavit and documents related to the application for arrest warrant may be filed under seal. Premature disclosure of the contents of the affidavit may have a negative impact on the success of an ongoing investigation in gathering evidence of these crimes.

25. Based on the facts set forth in this affidavit, I have probable cause to believe that ADAM WIKTORCZYK has committed mail fraud in violation of Title 18, United States Code, Section 1341.

FURTHER AFFIANT SAYETH NOT

_____
Paul K. Zukas, Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO ME BEFORE
THIS 17th DAY OF DECEMBER, 2007.

_____
MAGISTRATE JUDGE

11